UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| DIRECTV, INC. | CIVIL ACTION NO. 03-2177-A |
| -vs- | JUDGE DRELL |
| BARBARA GAGNARD, GERRY ELLIS, GARY GAGNARD, BOBBY LAND and TAMMY SHONE | MAGISTRATE JUDGE KIRK |

R U L I N G

Before the Court are plaintiff DIRECTV Inc.'s ("DIRECTV") motions with incorporated memoranda for default judgment against defendants Barbara Gagnard, Gerry Ellis, Gary Gagnard, and Tammy Shone (Docs. 20-23). Plaintiff seeks statutory damages against all of the aforementioned defendants, as well as a permanent injunction barring future violations of federal law concerning the unauthorized interception of digital communications. The four defendants have not answered DIRECTV's complaint nor made an appearance. Having reviewed DIRECTV's arguments against each of these defendants, the Court will grant DIRECTV's motions for default and award statutory damages, attorneys' fees and costs. DIRECTV's request for a permanent injunction, however, will be denied.

## FACTUAL BACKGROUND

Defendants, Barbara Gagnard, Greg Gagnard, Gerry Ellis, Bobby Land and Tammy Shone are all residents of Louisiana. Plaintiff, DIRECTV, is a satellite broadcasting service which provides television programming to subscribers according to one or more of several fee-for-service arrangements. DIRECTV's customers use equipment provided by DIRECTV to access and decrypt the broadcasts.

Shortly after DIRECTV's inception in 1994, products became available which promised to give viewers the ability to decrypt DIRECTV's satellite signals and view DIRECTV programming without a description. These products caused DIRECTV substantial pecuniary losses in the form of reduced subscription costs and fees. DIRECTV has a significant interest in preventing or minimizing the purchase and use of these devices.

In this suit, DIRECTV alleges that defendants Barbara Gagnard, Greg Gagnard, Gerry Ellis, Bobby Land and Tammy Shone each purchased equipment which allowed them to decrypt and view DIRECTV programming without paying the proper charges to DIRECTV for the services, in violation of federal law. DIRECTV alleges that each defendant used these devices to enjoy pirated broadcasts, and that each defendant actively modified their equipment to preserve its effectiveness at pirating programs. DIRECTV seeks monetary damages for these actions, as well as permanent injunctive relief ordering defendants not to engage in further piracy of DIRECTV programming.

The suit was served on all five defendants between January 28-30, 2004. Bobby Land was the only defendant who answered DIRECTV's complaint (Doc. 11). DIRECTV requested an entry of default against the remaining four defendants on February 9, 2004 (Doc. 17), and the default was entered on February 10 (Doc. 18). DIRECTV moved for timely default judgments against each of the four defendants (Docs. 20-23). Proof of service of all defendants is in the record (Docs. 1-4, Exh. A). This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## DEFAULT JUDGMENT STANDARD

Federal Rule of Civil Procedure 55(a) provides that when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . the clerk shall enter the party's default." Once the default is entered, the moving party may apply for a judgment of default. Fed. R. Civ. P. 55(b). The Court must exercise sound discretion when determining whether a default judgment is appropriate and must consider whether the defendant's failure to plead or defend is primarily technical, whether the plaintiff will be prejudiced, and whether a default judgment will result in an injustice. *Robinson v. Griffith*, 108 F.R.D. 152, 156 (W.D. La. 1985); *Finch v. Big Chief Drilling Co.*, 56 F.R.D. 456, 458 (E.D. Tex. 1972). Default judgments are a drastic remedy and should be granted "only when the adversary process has been halted" because of an essentially unresponsive party. *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). They are not a device whereby a case can

be resolved through a mere procedural maneuver. *Id.* To enter a default judgment, then, there must be a sufficient basis in the pleadings for granting the plaintiff's request for relief. *Nishimatsu Const. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). A default judgment is a harsh remedy and should not be entered where there is an alleged meritorious defense and substantial amounts are involved. *Gamble v. Pope & Talbot, Inc.*, 191 F.Supp. 763, 764 (E.D. Pa. 1961), *rev'd on other grounds*, 307 F.2d 729, 733 (2nd Cir. 1962). *Compare Beacon Gasoline Co. v. Sun Oil Co.,* 73 F.R.D. 505 (W.D. La. 1977) and *PepsiCo., Inc. v. California Security Cans*, 238 F. Supp. 2d 1172 (C.D. Ca., 2002)

## DISCUSSION

A. Statutory Damages

DIRECTV initially pled that defendants had violated 47 U.S.C. § 605(a) and (e), 18 U.S.C. § 2511, 18 U.S.C § 2512, and Louisiana state law forbidding civil conversion. DIRECTV has since moved for dismissal of its claims under 18 U.S.C. § 2511 and state law (Doc. 25). This latter motion will be granted.

The Court, therefore, only considers the alleged violations of 47 U.S.C. § 605(a) and (e) and 18 U.S.C § 2512, DIRECTV's request for damages pursuant to 18 U.S.C. § 2520, and DIRECTV's demand for permanent injunctive relief or, in the alternative, preliminary injunctive relief under 47 U.S.C. § 605(e)(3)(B)(i) and 18 U.S.C. § 2520.

18 U.S.C § 2512 prohibits the "manufacture, distribution, possession, and advertising" of electronic communication intercepting devices when the

4

individual knows or has reason to know that the design of such device makes it primarily useful for the purpose of surreptitious interception of electronic communications. This section is a criminal statute that does not give rise to a private right action. DIRECTV v. Robson, ____ F. Supp. 3d ____ (#04-30861, 5th Cir. Aug. 9, 2005). DIRECTV's claims under this provision must, therefore, be dismissed.

47 U.S.C. § 605 (a) provides that no one shall intercept any encrypted satellite signal, whether for private or commercial use. *United States v. Harrell*, 983 F.2d 36, 40 (5th Cir. 1993). DIRECTV alleges that: (1) defendant Barbara Gagnard purchased from Li Sang three "Terminator Bootloaders", which were shipped to her Pineville, Louisiana residence; (2) defendant Gerry Ellis purchased two bootloaders shipped to his residence in Vidalia, Louisiana; (3) defendant Gary Gagnard purchased two bootloaders which were shipped to his residence in Pineville, Louisiana; and (4) defendant Tammy Shone purchased one bootloader shipped to her residence in Pineville, Louisiana. DIRECTV avers each defendant had reason to know that their devices were designed to decrypt illicitly DIRECTV's satellite broadcasts and each defendant utilized the devices to view illegally decrypted programming.

Plaintiff alleges that defendants purchased bootloaders, knew that the bootloaders were intended to intercept and decrypt satellite television signals, and used the bootloaders to view the decrypted programming. This, on its face, establishes that defendants ran afoul of § 605 (a). Therefore, a discussion of

5

damages is appropriate. At the aggrieved party's election, 47 U.S.C. § 605 (e)(3)(C)(i)(II) provides for statutory damages of no less than $1,000 and no more than $10,000, as the Court considers just. DIRECTV has asked for $10,000 in damages from each defendant pursuant to § 605(e)(3)(C)(i)(II). The Court has great discretion in awarding damages under this statutory provision. *Kingvision Pay-Per-View, Ltd. v. Scott E's Pub. Inc.*, 146 F. Supp. 2d 955, 958 (E.D. Wis. 2001); *DIRECTV v. Hendrix*, 2005 WL 757562, *5 (N.D. Cal. 2005). DIRECTV pleads that the maximum $10,000 award per defendant is appropriate given the extent of defendants' unauthorized access and the value of the programming had it been purchased legitimately.

   1. Barbara Gagnard

In support of its claim against defendant Barbara Gagnard, DIRECTV offers the affidavit of Jamie Sichler (Doc. 21, Exh. E). Sichler's affidavit attests that the total value of programming available to this defendant was over $1,000,000 per year, while the value of programming actually viewed by the defendant was at least $2,748.96 per year. Sichler arrives at the latter figure by calculating the average monthly bill of high-end users who typically subscribe to sporting events, pay-per-view movies and adult material, programming that Sichler suggests is typically viewed by an individual engaged in piracy. Sichler also points out that the value of stolen programming actually viewed by defendants is potentially much higher since there is no financial disincentive against viewing more programming than the average high-end user. Sichler also asserts that the cost

of piracy is borne by DIRECTV's legitimate, paying, customers in the form of higher rates and fees. Sichler attests that Barbara Gagnard has possessed DIRECTV equipment necessary to receive the satellite signals since October 10, 2002 and that she had purchased the bootloaders in 2001. Although defendant's actual viewing time may have been lower than DIRECTV estimates, potential future violators are better deterred from illegal conduct if the award is not strictly limited to the value owed for the stolen programming. Given the potential value of DIRECTV services pirated by Barbara Gagnard for nearly 3 years, the Court finds that an award of $10,000 in damages, plus post-judgment interest, is appropriate.

2. Gerry Ellis

Sichler attests that Gerry Ellis purchased 2 bootloaders in 2001 and resides with another individual who has possessed DIRECTV equipment necessary to receive the satellite signals since 1997 (Doc. 22, Exh. E). An award of $10,000, plus post-judgment interest, is therefore appropriate for the same reasons indicated above for Barbara Gagnard.

3. Gary Gagnard

Sichler attests that defendant Gary Gagnard purchased two bootloaders in 2001 (Doc. 20, Exh. D). Although the record does not show whether Gary Gagnard himself possessed DIRECTV reception equipment, he has been in possession of the equipment allowing him to pirate DIRECTV programming through either his or someone else's equipment for nearly 4 years. The Court thus

finds that an award of $10,000 in damages, plus post-judgment interest, is appropriate.

    4. <u>Tammy Shone</u>

Sichler, finally, attests that defendant Tammy Shone purchased a bootloader in 2001 (Doc. 23, Exh. D).  An award of $10,000, plus post-judicial interest, is thus appropriate for the same reasons attributed to defendant Gary Gagnard.

SECTION 605(e)(4) CLAIMS

DIRECTV also pleads that defendants violated 47 U.S.C. § 605(e)(4), which prohibits the manufacture, assembly and modification of any electronic device designed illegally to intercept satellite cable programming. DIRECTV alleges that the defendants programmed and modified their bootloaders after receipt.  In particular, all defendants are alleged to have programmed and reprogrammed their Access Cards, and removed and reinserted their illegally programmed Access Cards into legitimate DIRECTV receivers.  The Court is not persuaded that the reprogramming of cards nor the insertion of cards into the devices constitutes "assembly" or "modification" within the meaning of the statute.  The devices arrived at the defendants' residences fully assembled and ready for use; their physical composition and design was unaltered by defendants' actions. Further, reprogramming does not constitute a "modification" of the devices since it in no way altered their design, but presumably was done merely to keep the

devices operational. Therefore, DIRECTV's claims under 47 U.S.C. § 605(e)(4) will be dismissed.[1]

## COSTS AND FEES

Section 605(e)(3)(B)(iii) directs the Court to award costs, including reasonable attorney fees, to an aggrieved party who prevails. DIRECTV offers the affidavit of its attorney, Katherine M. Loos (Doc. 21, Exh. C) as evidence of the costs and fees DIRECTV has incurred in pursuing its claims against defendants. Her affidavit states that DIRECTV has been billed $1,729.50 in attorney fees and $150.73 in costs relating to the claims against Barbara Gagnard. DIRECTV has also incurred $262.50 in attorney fees yet to be billed. DIRECTV also offers the affidavit of attorney Felix Chevalier (Doc. 21, Exh. C), who attests that DIRECTV has been billed $280.50 in fees and $30 in costs relating to the Gagnard claim and has incurred another $180 in unbilled fees. Loos attests that DIRECTV has been billed $1,456.50 in attorney fees in the Gary Gagnard matter, along with $106.70 in costs and $262.50 in unbilled attorney fees (Doc. 20, Exh. C). Chevalier attests that he has charged DIRECTV $159 in billed and $180 in unbilled fees, and $30 in additional costs in connection with the Gary Gagnard matter (Doc. 21, Exh, C). Loos has charged DIRECTV $1,530.50 in billed and $262.50 in unbilled attorney fees and $117.29 in costs in connection with the Tammy Shone matter(Doc. 23, Exh. C). Chevalier has charged $159 in billed and $180 in unbilled fees and $ 30

---

[1] In this dismissal, the Court also notes parenthetically that even if card reprogramming constituted a violation of Section 605(e)(4), a separate and additional award of damages to DIRECTV would not be appropriate. The statutory damages awarded here are well sufficient to compensate DIRECTV for its losses.

9

in costs regarding the Tammy Shone matter (Doc. 23, Exh. C). Loos attests that she has charged DIRECTV $1,761.50 in billed and $262.50 in unbilled fees and $107.62 for costs in connection with the Gerry Ellis matter (Doc. 22, Exh. C). Chevalier attests that he has charged DIRECTV $213 in billed and $180 in unbilled fees and $30 in expenses in connection with the Gerry Ellis matter (Doc. 22, Exh. C).

Based upon the evidence and arguments presented, the Court finds these fees and costs to be reasonable and will award said amounts to DIRECTV in accordance with 47 U.S.C. § 605(e)(3)(B)(iii).

## INJUNCTIVE RELIEF

DIRECTV has requested that defendants be permanently enjoined from further violations of 47 U.S.C. § 605(a). The four prerequisites for the extraordinary relief of a preliminary or permanent injunction are (1) a substantial threat that the denial of the injunction will result in irreparable harm to the plaintiff (2) the threatened injury to the plaintiff outweighs any damage that the injunction may cause to the opposing party, (3) a substantial likelihood that the plaintiff will succeed on the merits, and (4) issuance of the injunction will not disserve the public interest. *Lakedreams v. Taylor,* 932 F.2d 1103, 1107 (5th Cir. 1991) *Azteca Enterprises, Inc. v. Dallas Area Rapid Transit*, 1999 WL 102803, *2 (N.D. Tex. 1999). Our inquiry into DIRECTV's request begins and ends with the second factor. An irreparable injury is one that cannot be remedied with an award of money damages. *Enterprise Intern, Inc. v. Corporacion Estatal Petrolera*

10

*Ecuatoriana*, 762 464, 473-4 (5th Cir. 1985). It is the irreparability of the injury, not the magnitude, that must be examined. *Id.* at 473. Importantly, the possibility that adequate compensatory relief is or will be available through litigation weighs heavily against a finding of irreparable harm. *Sampson v. Murray*, 416 U.S. 61, 70 (1974).

In this case, DIRECTV has shown no injuries other than lost revenue, reputation, good will, and quality of programming, and has not alleged that any other types of injuries are possible at a later date. As explained, the pecuniary provisions of Section 605 give DIRECTV an adequate financial remedy for its lost revenues. The potential loss of reputation, good will, and quality of programming are mere adverse effects which do not constitute irreparable harm. Thus, any future violations of Section 605 can be adequately remedied through a future award of money damages by this Court. Also, defendants' future violations of Section 605(a) are more effectively deterred by the criminal penalties imposed upon those who illegally intercept satellite communications. *See* 47 U.S.C. § 605(e)(1). Without a showing of extra-pecuniary loss, then, DIRECTV's request for permanent injunctive relief must fail.

A separate judgment will issue accordingly.

SIGNED on this 16th day of August, 2005, at Alexandria, Louisiana.

Dee D. Drell
United States District Judge