UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| DIRECTV, INC. | CIVIL ACTION NO. 03-2177-A |
| -vs- | JUDGE DRELL |
| BARBARA GAGNARD, GERRY ELLIS, GARY GAGNARD, BOBBY LAND and TAMMY SHONE | MAGISTRATE JUDGE KIRK |

## AMENDED RULING

Pursuant to Federal Rule of Civil Procedure 60(a), the following is substituted for the Ruling of this Court issued on August 16, 2005, which previous Ruling (Doc. 26) is hereby withdrawn. This Amended Ruling does not alter the final result. Therefore, the Judgment signed on August 16, 2005 (Doc. 27) remains in force.

Before the Court are motions for default judgment filed by plaintiff, DIRECTV, Inc. ("DIRECTV") against Barbara Gagnard, Gerry Ellis, Gary Gagnard, and Tammy Shone (Docs. 20-23). Plaintiff seeks statutory damages against all of the aforementioned defendants, as well as a permanent injunction barring future violations of federal law concerning the unauthorized interception of digital communications. The four defendants have not answered DIRECTV's complaint nor made an appearance. Having reviewed DIRECTV's arguments against each of these defendants, the Court will GRANT DIRECTV's motions for default and

award statutory damages, attorneys' fees and costs. DIRECTV's request for a permanent injunction, however, will be DENIED.

## I. BACKGROUND

Barbara Gagnard, Greg Gagnard, Gerry Ellis, Bobby Land and Tammy Shone, defendants in the instant action, are all residents of Louisiana. Plaintiff, DIRECTV, is a satellite broadcasting service which provides television programming to subscribers according to one or more of several fee-for-service arrangements. DIRECTV's customers use equipment provided by DIRECTV to access and decrypt the broadcasts.

Shortly after DIRECTV's inception in 1994, products became available which promised to give viewers the ability to decrypt DIRECTV's satellite signals and view DIRECTV programming without a subscription. These products caused DIRECTV substantial pecuniary losses in the form of reduced subscription costs and fees. DIRECTV has a significant interest in preventing or minimizing the purchase and use of these devices.

In this suit, DIRECTV alleges that Barbara Gagnard, Greg Gagnard, Gerry Ellis, Bobby Land and Tammy Shone purchased and used equipment which allowed them to decrypt and view DIRECTV programming without paying the proper charges to DIRECTV for the services, in violation of federal law.

All five defendants were served with the summons and complaint in January 2004 (Docs. 6-10), but, to date, only Bobby (Damon) Land has filed any type of responsive pleading (Doc. 11). DIRECTV requested an entry of default

against the remaining four defendants on February 9, 2005 (Doc. 17), and the default was entered on February 10, 2005 (Doc. 18). DIRECTV then properly moved for default judgments against those four defendants (Docs. 20-23). This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## II. LAW AND ANALYSIS

A.   Default Judgment Standard

Federal Rule of Civil Procedure 55(a) provides: "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . the clerk shall enter the party's default." Subsequently, the court may enter a judgment of default. Fed. R. Civ. P. 55(b)(2). The court must exercise sound discretion when determining whether a default judgment is appropriate and should consider the following factors:

> (1) the amount in controversy; (2) whether material issues of fact or issues of substantial public importance exist; (3) whether the default is largely technical or substantive in nature; (4) whether the plaintiff has been substantially prejudiced by the delay involved; and (5) whether the grounds for default are clearly established or are in doubt. 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure, §§ [*sic*] 2685 at 32-36 (3d ed. 1998) ("Wright & Miller") (internal citations omitted). Furthermore, the court may consider how harsh an effect a default might have; or whether the default was caused by a good-faith mistake or by excusable or inexcusable neglect on the part of the defendant," Id. at 36-38 (internal citations omitted).

DIRECTV, Inc. v. Griffin, 290 F. Supp. 2d 1340, 1343 (M.D. Fla. 2003).

3

B.      47 U.S.C. § 605(a) Claims

DIRECTV initially alleged defendants had violated 47 U.S.C. § 605, 18 U.S.C. §§ 2511-2512 and 2520, as well as Louisiana's law forbidding civil conversion. (Doc. 1.) DIRECTV has since moved for dismissal of its claims under 18 U.S.C. § 2512 and state law (Doc. 25). This latter motion will be GRANTED.

18 U.S.C. § 2511 prohibits the interception of, or procurement of another person to participate in the interception of, any wire, oral, or electronic communication. This section is a criminal statute that does not give rise to a private right of action. DIRECTV, Inc. v. Bush, 2003 U.S. Dist. LEXIS 24557, No. H-03-1765 (S.D. Tex. Oct. 24, 2003) [cited with approval in DIRECTV, Inc. v. Robson, 420 F.3d 532 (5th Cir. 2005)]. DIRECTV's claims under this provision must, therefore, be dismissed.

47 U.S.C. § 605 provides that no one shall intercept any encrypted satellite signal, whether for private or commercial use. United States v. Harrell, 983 F.2d 36, 40 (5th Cir. 1993). DIRECTV alleges that: (1) defendant Barbara Gagnard purchased from Li Sang three "Terminator Bootloaders" ("Bootloaders"), which were shipped to her Pineville, Louisiana address; (2) defendant Gerry Ellis purchased two Bootloaders, which were shipped to his address in Vidalia, Louisiana; (3) defendant Gary Gagnard purchased two Bootloaders, which were shipped to his address in Pineville, Louisiana; and (4) defendant Tammy Shone purchased one Bootloader, which was shipped to her address in Pineville, Louisiana.

DIRECTV avers each defendant had reason to know the equipment was designed to decrypt illicitly DIRECTV's satellite broadcasts and each defendant utilized the device(s) to view illegally decrypted programming. These allegations establish that defendants ran afoul of § 605. Therefore, a discussion of damages is appropriate. At the aggrieved party's election, 47 U.S.C. § 605 (e)(3)(C)(i)(II) provides for statutory damages of no less than $1,000 and no more than $10,000, as the court considers just. DIRECTV has asked for $10,000 in damages from each defendant. The court has great discretion in awarding damages under this statutory provision. Kingvision Pay-Per-View, Ltd. v. Scott E's Pub. Inc., 146 F. Supp. 2d 955, 958 (E.D. Wis. 2001). DIRECTV pleads that the maximum $10,000 award per defendant is appropriate given the extent of defendants' unauthorized access and the value of the programming had it been purchased legitimately.

### 1. Statutory Damages Against Barbara Gagnard

In support of its claim against defendant Barbara Gagnard, DIRECTV offers the affidavit of Jaime Sichler (Doc. 21, Exh. E). Sichler's affidavit attests that the total value of programming available to this defendant was more than $1,000,000 per year, while the value of programming actually viewed by the defendant was at least $2,748.96 per year. Sichler arrives at the latter figure by calculating the average monthly bill of high-end users who typically subscribe to sporting events, pay-per-view movies and adult material, programming that Sichler suggests is typically viewed by an individual engaged in piracy. Sichler points out that the value of stolen programming actually viewed by defendant is potentially much

higher since there is no financial disincentive against viewing more programming than the average high-end user. Sichler also asserts that the cost of piracy is borne by DIRECTV's legitimate, paying customers in the form of higher rates and fees. Sichler attests that Barbara Gagnard has possessed DIRECTV equipment necessary to receive the satellite signals since October 10, 2002 and that she had purchased the Bootloaders in 2001. Although defendant's actual viewing time may have been lower than DIRECTV estimates, possible future violators are better deterred from illegal conduct if the award is not strictly limited to the value owed for the stolen programming. Given the potential value of DIRECTV services pirated by Barbara Gagnard for nearly three years, the Court finds that an award of $10,000 in damages, plus post-judgment interest, is appropriate.

    2.    <u>Statutory Damages Against Gerry Ellis</u>

Sichler attests that Gerry Ellis purchased two Bootloaders in 2001 and resides with another individual who has possessed DIRECTV equipment necessary to receive the satellite signals since 1997 (Doc. 22, Exh. E). An award of $10,000, plus post-judgment interest, is, therefore, appropriate for the same reasons applicable to Barbara Gagnard.

    3.    <u>Statutory Damages Against Gary Gagnard</u>

Sichler attests that defendant Gary Gagnard purchased two Bootloaders in 2001 (Doc. 20, Exh. D). Although the record does not show whether Gary Gagnard himself possessed DIRECTV reception equipment, he has had devices that would allow him to pirate DIRECTV programming through either his or

someone else's reception equipment for nearly four years. The Court thus finds that an award of $10,000 in damages, plus post-judgment interest, is appropriate.

4.     Statutory Damages Against Tammy Shone

Sichler, finally, attests that defendant Tammy Shone purchased a Bootloader in 2001 (Doc. 23, Exh. D). An award of $10,000, plus post-judgment interest, is thus appropriate for the same reasons attributed to defendant Gary Gagnard.

C. Section 605(e)(4) Claims

DIRECTV also pleads that defendants violated 47 U.S.C. § 605(e)(4), which prohibits the manufacture, assembly and modification of any electronic device designed illegally to intercept satellite cable programming. DIRECTV alleges that the defendants programmed and modified their Bootloaders after receipt. In particular, all defendants are alleged to have programmed and reprogrammed their Access Cards and to have removed and reinserted their illegally programmed Access Cards into legitimate DIRECTV receivers. The Court is not persuaded that the reprogramming of cards and/or the insertion of cards into the devices satisfies the definitions of "assembles" or "modifies" within the meaning of the statute. The devices arrived at the defendants' addresses fully assembled and ready for use; their physical composition and design were unaltered by defendants' actions. Further, reprogramming does not constitute modification of the devices since it in no way changed their design, but presumably was done merely to keep the devices operational. Therefore, DIRECTV's claims under 47

7

U.S.C. § 605(e)(4) will be DISMISSED. In conjunction with this dismissal, the Court notes parenthetically that even if card reprogramming constituted a violation of Section 605(e)(4), a separate and additional award of damages to DIRECTV would not be appropriate. The statutory damages awarded here are well sufficient to compensate DIRECTV for its losses.

D. Costs and Fees

47 U.S.C. § 605(e)(3)(B)(iii) directs the court to award costs, including reasonable attorney fees, to an aggrieved party who prevails. DIRECTV offers the affidavits of its attorneys, Katherine M. Loos and Felix Chevalier (Docs. 21-22, Exh. C; Docs. 20 and 23, Exh. C), as evidence of the costs and fees DIRECTV has incurred in pursuing its claims against the four defendants at issue. Ms. Loos states DIRECTV has been billed $1,729.50 in attorney fees and $150.73 in costs relating to the claims against Barbara Gagnard. DIRECTV has also incurred $262.50 in attorney fees yet to be billed. Additionally, Felix Chevalier attests that DIRECTV has been billed $280.50 in fees and $30.00 in costs relating to the Barbara Gagnard claim and has incurred another $180.00 in unbilled fees. Loos attests that DIRECTV has been billed $1,456.50 for attorney fees in the Gary Gagnard matter, along with $106.70 in costs and $262.50 in unbilled attorney fees. Chevalier states he has charged DIRECTV $159.00 in billed and $180.00 in unbilled fees as well as $30.00 in additional costs in connection with the Gary Gagnard claim (Doc. 20, Exh, C). Loos has charged DIRECTV $1,530.50 in billed and $262.50 in unbilled attorney fees and $117.29 in costs in connection with the

8

Tammy Shone matter. Chevalier has charged $159.00 in billed and $180.00 in unbilled fees as well as $ 30.00 in costs regarding the Tammy Shone case (Doc. 23, Exh. C). Loos attests that she has charged DIRECTV $1,761.50 in billed and $262.50 in unbilled fees and $107.62 for costs in connection with the Gerry Ellis litigation. Chevalier shows he has charged DIRECTV $213.00 in billed and $180.00 in unbilled fees as well as $30.00 in expenses in connection with the Gerry Ellis matter (Doc. 22, Exh. C).

Based upon the evidence and arguments presented, the Court finds these fees and costs to be reasonable and will award said amounts to DIRECTV in accordance with 47 U.S.C. § 605(e)(3)(B)(iii).

E. Injunctive Relief

DIRECTV has further requested that these defendants be permanently enjoined from further violations of 47 U.S.C. § 605(a). To obtain such an extraordinary remedy, plaintiff must prove, among other things, that the denial of the injunction will result in irreparable injury. Dresser-Rand Company v. Virtual Automation, Inc., 361 F.3d 831 (5th Cir. 2004). An irreparable injury is one that cannot be remedied with an award of money damages. Id.

In this case, DIRECTV complains of no injuries other than lost revenue, reputation, good will, and quality of programming. As explained, the damages provisions of 47 U.S.C. § 605 give DIRECTV an adequate financial remedy for its lost revenues. The potential loss of reputation, good will, and quality of programming are mere adverse effects which do not constitute irreparable harm.

9

Thus, any further violations can be adequately remedied through an award of money damages. Also, defendants' future violations of Section 605(a) are more effectively deterred by the criminal penalties imposed upon those who illegally intercept satellite communications. See 47 U.S.C. § 605(e)(1). Without a showing of extra-pecuniary loss, then, DIRECTV's request for injunctive relief must fail.

SIGNED on this 14th day of October, 2005, at Alexandria, Louisiana.

Dee D. Drell
United States District Judge